Good morning, Counsel. Good morning, Your Honor. May it please the Court. David Byrd here today on behalf of the Bank of New York Mellon. I'd like to reserve five minutes for rebuttal. In the prior argument, there was a lot of discussion about DART Cherokee, about Durham, and about the legislative history. And while I agree with everything that my colleague, Mr. Chilton, argued to Your Honors, I'd like to start with the timing issue in a slightly different place, and that is with the text of the statutes themselves. And in particular, I'd like to focus the Court's attention on three statutes, 1446B, 1453, and Section 2 of CAFA itself, which is codified in a note to Section 1711. Let's start with 1446B. 1446B says that a defendant may remove a case within 30 days of the initial pleading or an amended pleading or other paper from which it can be ascertained that the case has become removable. The statute does not define the term removable, and we would submit that removable is ambiguous. You have to look to another statute that confers a removal right to determine whether a case or when a case has become removable. Here, the statute that we look to is 1453, which is part of CAFA and was amended and introduced into the U.S. Code to provide defendants with a separate and independent right to remove class actions that qualify under CAFA. That separate and distinct right is separate and distinct from 1441. Congress certainly was aware of 1441 and cases thereunder applying and construing 1441 and 1446B. Congress did not simply amend 1332, nor did it simply amend the procedures for removal under 1446. In 1453B, it began with statutory language that expressly authorizes removal, regardless of whether one has or has lost a right to remove under 1441. The text of 1453B is almost identical to the right removal granting authority used in 1441, used in 1442, and used in every other statute that provides a removal right. So the text there gives us a distinct right. That right also is one that is provided for a specific and special congressional purpose, and for that we can look to section 2 of CAFA, which is not legislative history, but is in fact part of the law that was enacted by all of Congress and signed by the President, and which this Court is required to follow. That includes an express statement of findings and purposes which indicate the kind of concerns and the types of cases that Congress was interested in providing this removal right to, and this case indisputably fits within that. So you have a special textual grant of authority to remove in 1453B. You have an express textual statement of purpose in section 2. And our position here is, independent of DART, independent of Durham. What is the CAFA section? Did you say 2B or 2? It is in the CAFA section is, I believe, 2A is the findings and 2B is the statement of purpose. And what's just read the language that you think is, if there's some particular language you think is so significant, because I don't have it in front of me, so I'm wondering what you're talking about. I'll be happy to, Your Honor. And where is that found again? You said it's codified as a note to what section? I believe it is 1711. It's cited in our brief. So Congress is concerned with abuses of the class action device that have harmed class members with legitimate claims and defendants that have acted responsibly, that have adversely affected interstate commerce, and that have undermined respect for our judicial system. And they are concerned with cases that are keeping cases of national importance out of Federal court. That's in section 2. That's all directly from section 2. And I'm sorry. What I was just quoting from was from section A. Those are the findings that Congress found. As far as I know, Your Honors, that section and that statutory language has never been considered when Your Honors were applying presumptions against removal and so forth. So the cases that apply the presumptions or discuss presumptions against removal in the CAFA context ought to be reconsidered in light of the statutory language which has never been addressed before. So if I'm understanding you correctly, you're saying that section 2A of CAFA itself effectively overrules the presumptions of Durham insofar as cases are within the umbrella of CAFA. Is that correct? Well, the presumptions that the Court has previously stated about anti-removal in the context of CAFA have never looked at, as far as I am aware, that language. I hear you. But I'm just saying you're now saying that when you look at CAFA section 2A, that it's good that the law, putting aside DART, our earlier presumption does not apply when you're dealing with CAFA. Is that correct? Well, I think simply put, yes. Our position is that you have to construe the time period granted in 1446B in light of the specific statutory right of removal. Here that's 1453B. And you also should, in looking at the intersection of 1446B and 1453B, look at section 2A and B of CAFA, because that gives you an important guide. And, Your Honors, in the prior cases where you've discussed this presumption against removal, you've never done the job of looking at that. So I would here today make an argument that I don't think has ever been made to this Court before, that one should look at it. I also do agree with what Mr. Chilton said about DART-Cherokee. And it's important to note on the DART-Cherokee point, first of all, Your Honor, a question you asked earlier suggested that you thought DART-Cherokee might only be concerned with 1332. But the facts of DART-Cherokee are that it was a case that was removed under 1453. I can't recall that the Court's decisions are only referencing 1332. But it is a 1453 case, and that is clear on the State of it. Just so we're talking about the same thing here, because I want you to address what I actually said. I'm quoting here from DART at 551. The Court said, To assert the amount in controversy adequately in the removal notice, does it, this is the question, does it suffice to allege the requisite amount plausibly, or must the defendant incorporate into the notice of removal evidence supporting the allegation? And then the Court says, This is the single question argued here and below by the parties, and the issue on which we granted review. And this was under 1453. Correct. Not 1332. 1453. Correct. Okay. So we're on the same page here? Absolutely. And part of what the Court was correcting in DART-Cherokee was a district court decision on that issue that ruled against the defendant, implying an anti-removal presumption. And what the Court said is the district court was wrong to apply an anti-removal presumption. So in that respect, it's more than dicta, and I think it is essential to it. It's also significant to the point of ambiguity that the Court recognized the ambiguity in the statute and looked to the legislative history. We think that's important to hear as well, and it supports us. So you have statutory text. You have a statutory statement of purpose. You have ambiguities that require this Court to look at it in context and in light of Congress's purpose, which includes the statutory statements and the legislative history. And in particular here, the specific — one of the specific congressional purposes was to prevent gamesmanship, gamesmanship by plaintiffs who obscure or hide the true nature of their causes of action. So, for example, here, our opponent, Eminence, didn't assert a class action until a few months before trial, more than two years into the litigation. That kind of gamesmanship is, we think, a classic example of the kind of concern that motivated Congress. So just to be sure, your nation star did not accuse Ms. Jordan of gamesmanship. I gather that you're accusing his eminence of gamesmanship. Is that right? I think it's a fair question to ask why they waited two years to assert a class action, and they did so several months before trial. They've never provided anything like a clear or coherent answer to that question. So I'm not here to cast aspersions on anyone, and I don't want to impugn anyone's credibility. But certainly gamesmanship was something Congress was aware of and concerned of in this area, and is the type of concern that we ought to be concerned with here as well. There is also the point, too, that if you allow the kind of time, if you allow or cut off the removal time in the right that's provided under 1453, going forward what you will see is gamesmanship, because it will be very easy for individuals and plaintiffs' lawyers to come in, assert what seems to be a small-dollar traditional diversity case, wait for the period to run, and then change it into a class action. And the response, as Mr. Chilton explained at the end of his argument, is precisely the one that should be a concern to the Court, which is that the defendants faced with those will need to remove cases that otherwise they would keep in Federal court. So I think that is an important factor as well. The other thing I want to circle back to on this point about the presumption and whether or not DART-Cherokee overrules it is, if this Court maintains its position that there is an anti-removal presumption in CAFA cases, it will be creating a direct circuit split with the Eleventh Circuit in the Dudley case. And that is something, obviously, that the Court has the authority to do and should do, but I would simply urge the Court to be cognizant and careful of the fact that if it maintains that, it will be creating that split. So I think that we should be aware of that as well. Kennedy. Kennedy. I'm sorry. My colleague can, of course, ask you whatever questions he wants. I was going to ask you whether you wanted to retain some rebuttal time, but I leave this to you. I would like to retain the balance of my time, but I'm happy to take Judge Wofford's question. I have some questions about the securities exception. Absolutely. I'm happy to address them now or in the rebuttal time, whatever you would like. Why don't you address, at least start now, because I will tell you, I came, I've come in inclined to think that we should affirm on that ground as opposed to this Durham-based removal ground. It's an understandable point of confusion, and I'd like to set the Court straight with it. Let's start with the securities exception. It only applies to class actions that solely involve claims that relate to rights or duties created by, pursuant to, or related to a security. The plaintiff bears the burden under the plain language of the statute because of the word solely, of proving to Your Honors that every claim is within 1453d, every single one. If they fail on any point, the exception does not apply. And if there is unclearness or equipoise on any point because they bear the burden, the exception does not apply. All of the duties that they allege your client breached, right, if I understand it, arose by virtue of this indenture agreement. That's not correct, Your Honor. Why is that not right? First of all, let's be very clear that we are, in this case, an indenture trustee, which is different than a common law trustee. An indenture trustee owes only duties that are strictly defined by the indenture and does not owe any of the broader common law duties of a trustee. That is, if you want to see in the record, at pages 534 through 35, in a motion to dismiss, we laid out all the legal authority that clearly supports that position. But to go back to Your Honor's question about the source of the duty, what's established in the case law is it has to be created by or arising from or grounded in the terms of the security itself or superimposed on the administrator as a result of the relationship. Our indenture relationship does not give a rise to any of the duties that are cited there. Scalia. Well, then you'll win. I beg your pardon, Your Honor. I thought that was why we were going to hear this case. It struck me that there was a real issue here dealing with whether it's within the securities exception. And if it is, we dismiss the appeal. Well, I understand that you spent a lot of time on another issue, but as one-third of the panel, this is the one that concerned me most. I fully appreciate that. It's interesting that the securities exception wasn't raised until the merits were raised at the petition stage. We probably would have done a better job of briefing it. But let me try to give you three specific points in the record that substantiate my point that they have not proven that every single one of their claims arises under the indenture. First, let's. And it's the bonds or the indenture? Correct. First, let's look at page 296 of the record and 298 at paragraph 49 of their amended complaint. This is their first count for breach of fiduciary duty. What paragraph? It's paragraph 49, Your Honor. Paragraph 49 asserts two independent sources of State law for that claim. The first is they say that we owe them a fiduciary duty by reason of the indenture. I want to make sure I'm on the right. 296, is that the ER site, or am I in the wrong place? Paragraph 49 of the first amended complaint? Paragraph 49 of the first amended complaint on page ER-296. So the first four or five words, by reason of the indenture, here is the duty that we say? Correct. And that asserts the indenture. The part that shows that their claims are not solely predicated on the indenture is the second sentence after that. BNY Mellon set out to create and did, in fact, create a special relationship of trust and confidence, and thereby owed a fiduciary duty. By virtue of its status as the indenture trustee. No, no, because the language there, the set out to create and did, in fact, create a special relationship, is the language that is traditionally found in the case law for common law trusteeship. Setting out, one cannot, as an indenture trustee, set out and create that kind of special relationship, because that's not what an indenture trustee is. So the first two sentences there, the first one identifies the indenture, but the second one identifies common law. And that shows, and that is true for each of the first three causes of action. Then if you look at paragraph on page ER-300, if you look at paragraph 67, that accuses us of gross negligence, which is a duty that arises under State law, independent of any contractual obligation. And in paragraph 67, it further references that BNY further owed professional duties under applicable State and Federal laws, industry standards, and professional codes of ethics. So right there, we see on the face of their complaint, they are identifying sources of law that are independent of the indenture itself. And in fact, Your Honor, if you read the entire complaint, and I highly encourage you to do so, you will see that nowhere in the complaint is there any reference to any term or provision of the indenture which we allegedly breached. None. Absolutely none. So. Roberts. But it doesn't have to be a breach of contract action. The statute, the securities exception itself specifically says fiduciary duty claims fall within it. True. True. And as long as the fiduciary duties arise by virtue of the relationship created by the security, the exception applies. But the relationship, they do not arise by their allegations are not that they arise by virtue of the relationship, because an indenture trustee does not owe common law fiduciary duties. And if you look at the indenture itself, it does not give us a duty to monitor the development property or notify them of that. So look, for example, at Articles 8 and Articles 9. In particular, look at Article Section 902F, I, J, and K, and N. They all contain exculpatory provisions which do not obligate us to do that. I hear you on that, but tell me why I'm wrong in thinking this. I guess I assume that the question we're supposed to be asking is whether any of these duties, wherever they come from, whether they arise only by virtue of the fact that this relationship is established by virtue of the security. So, for example, I would think in order for you to prevail on this point, we'd have to say if the indenture agreement did not exist, right? Right. There's no relationship created by that. Would these people have any claims against your client? And I would think the answer is no. Well, they are asserting, in fact, because, again, they're not pointing to any provision that we have breached under our indenture relationship. An indenture trustee services bond debt. That's all we do. They are saying that by virtue of agreeing to service bond debt, that when the bonds came into default, we all of a sudden wound up having a whole host of duties under the common law that we never bargained for and, in fact, bargained against. And that is the source of it. So, in fact, the event that they think springs these duties that they've pointed to is not the indenture. It's not the terms of the indenture that they're suing to enforce. It is, in fact, duties that arise because of an exogenous event, which is the default, which is triggered by third parties who are not before the Court, that they say all of a sudden transform a debt servicer, an indenture trustee with limited strict contract duties, into something like a common law trustee. And they point to language in each and every count of their complaint that identifies that. And let me come back to an important point. If Your Honor is not completely convinced that they are right about this, we prevail, because they are the ones that have the burden of setting up and establishing the exception. So they have to convince you on every single count and every part of every count. And let me give you one more factual example of why they can't. One of their primary claims against us that is incorporated into each and every count that they make is related to our role in the sale of a property known as the district property. We owe them, as an indenture trustee, no duties whatsoever with respect to the indenture  trustee. It is, and they say this in their complaint at paragraphs 17 and 22, it's not part of the collateral for the 1996 series bonds, and it is, in fact, collateral for different bonds that they have no interest in and for which we are not their indenture trustee. So to the extent that each and every one of their counts is predicated on these allegations about the district count, that again shows you that not every one, not every one, their class action is not solely related to rights and duties. I think everything you've said, though, the reason they're suing your client is solely by virtue of its status as the indenture trustee. If it was not, if it didn't hold that status, they would have no claims whatsoever, even on any of the grounds you've argued. Well, you know, it would be great if they would concede that, Your Honor, here to you today. I don't think they will. And the reason why is because at the bottom, if they are suing us solely by virtue of our contractual obligations under the indenture and the related duties that arise from that contractual arrangement, they are going to lose. But they have artfully crafted, and again, this goes back to the CAFA points that we are concerned about artful pleading here. They have artfully crafted their complaints to try to meld and blur indenture trustee duties, which are very obscure and technical and related to the securities industry and debt servicing, with elements of traditional fiduciary duty claims. It's very skilled and sophisticated, Your Honor. And my hat's off to them as a matter of drafting, but it shows that they cannot be suing under, solely under, the rights and duties that are created by the indenture itself. I'm well over my time. I do want to say. Let me ask my colleague. Do you have other questions at this point? No, I appreciate your question. Why don't you hold off? We'll see whether we do a rebuttal here. Give me a little bit of time. Let's hear from Mr. Branch, and then we'll come back. I appreciate the extra time, Your Honor. Thank you very much. Thank you. I assume you don't want us to call you your remnants. No. Good morning, Your Honor. Robert Branch, appearing on behalf of eminence investors. And it's apparent, given the line of questioning, that what interests the court, at least to a high degree, is the issue of the securities exception, which, of course, controls whether or not there's subject matter jurisdiction over this appeal. In regard to the... You would say if there is none, then we have to dismiss the appeal. That's correct. And that would be consistent with what the Second Circuit approach is in both Greenwich and BlackRock. Why don't you tell us why you think your adversary was in error? He made a very strong argument. I'd like to hear your response. The complaint is a complaint by bondholders, especially as it's classed as a class action of bondholders, against the indenture trustee under an indenture and agreement for the administration of the bondholder's interest in the fund, in collecting the fund and providing some return on the bonds. As alleged in the complaint, the default occurred in 2001 on these bonds, and the indenture trustee has been dealing with them for over a decade. In this process, we have alleged a number of things that are inconsistent with its performance of its obligations. Are those obligations that wholly arise under the terms of the indenture, or are they common law based in whole or in part? That's actually a mixed question. It is. The obligations arise because of the indenture agreement. If the indenture agreement did not exist, would you still have a cause of action against these folks? We would not. You would not. So your claim is that however the complaint was drafted, that it sounds entirely on the issues arising out of the indenture. Is that correct? That's correct. So all of the claims have to relate to the duties that arise from the indenture agreement or the bonds. All of them. All of the duties arise from the indenture agreement. Now, whether they are the express terms, whether they're a breach of fiduciary duty based upon the common law governing indenture trustee obligations, and we set those forth. I'm sorry to cut you off, but your opponent, of course, says that there are no such duties in the indenture trustee context. As soon as you wander beyond what is expressly laid out in the indenture agreement itself, you've wandered into the just general common law trustee type duties, and so you're outside the securities exception. What's your response to that argument? The allegations as stated in the claim, in my understanding for purposes of removal and remand, we're looking at the complaint, is that the claims are based on the failure of the indenture trustee to perform the obligations provided under the law, and again, we've outlined all those obligations both pre- and post-default. Let me ask you this. Under the indenture... Let's just say that the common law says that under the circumstances you should do A, but the indenture says under identical circumstances that you should do B. In this situation, are you saying that regardless of what B says, that you would still have a cause of action under A in my hypothetical? Well, I think under your hypothetical, the examination has to be twofold. First of all, not only is it what the agreement says with regard to specific... Excuse me. What the law says with regard to specifically performing the express provisions of the agreement, which is also the law, and incorporate within that the notion that there is a law essentially of trust that also applies to indenture trustees that governs the way in which the obligations are performed. So you're saying that the indenture says what it says, that there's this envelope of federal law, indentured trust, and other acts, and just general law that inevitably helps us construe the meaning of the indenture agreement. Is that right? Yes, certainly. And that when there's a violation of those overriding laws that are of necessity resorted to in construing the indentured agreement, that it's still... You're still talking about the indenture agreement and the fact that the indenture agreement may say one thing, but the law overrides that. It's still part of the indenture agreement. Is that your position? Yes. Just certainly as every failure to perform is not a breach of fiduciary duty. And clearly within the realm of CAFA, the securities exception expressly provides for breach of fiduciary duties. How do you relate that argument to subsection 3 under this exception for the class section? A claim that relates to the rights, duties, including fiduciary duties, and obligations related to or created by or pursuant to any security. That seems to limit it to the security, doesn't it? How do you then move as your adversaries, you cleverly move over into common law? His argument is once you move away from created by or pursuant to a security, once you move away, you're outside the exception. You say you're inside the exception. Um, the the trail we trod here has been traveled by the court in the Second Circuit and with a trilogy of decisions one of which I believe was participated in a case participated in by the Bank of New York Mellon called Cardinale, Greenwich, and Blackrock. And the holdings in those cases recognize, first of all, that that's very broad language and I'm not sure what Your Honor refers to in that being the instrument itself. It says it relates to and I think in terms of let me put it this way, if I were drafting a discovery question where I wanted as much as I could possibly get this is very good language. You know, we got what we got and we wish we could rewrite Congress' laws at times but unfortunately we can't. So it says a claim that relates to the rights, duties, and obligations relating to or credited to by pursuant to any security. Right. And a bond is a security and the indenture agreement is actually tied in 100% to the operation of those bonds. I mean, the indenture trustee represents essentially the beneficiaries. In fact, the Bank of New York has told us on more than one occasion we can't enforce without getting over if they choose not to unless we have more than 25% of the ownership interest. Okay. The language then is rather specific of where this is going to come from. Your adversary indicates that you're not staying within that because you're relying upon common law principles in order to pursue your claim and therefore you're outside the exception. I think breach of fiduciary duty is a The cases that we've referred to in the Blackrock case, in the Greenwich case, in the Cardinale case make it clear that the imposition of or the super imposition of common law obligations over the security or the relationship which is related to the security does not deprive the matter of falling within the security's exception. So what you're saying is that that doesn't change the rights and duties and obligations relating to the right created by the security it has more to how the courts will handle the issue? Is that your argument? It has to do with the scope of the liability that's covered within that provision, yes. So in other words to suggest that we can assert a breach of fiduciary duty cause of action arising out of the rights and duties and obligations and it's I don't have the precise language I do but it's pursuant to A claim that relates to the rights, duties, including fiduciary duties and obligations relating to or created by or pursuant to any security. So it's that it's that expression and I won't call it intent but it's the direct expression of these of this manner in covering all those relationships related to, pursuant to, created by that then is acted upon by or are related to the claims it's claims that are enforcing that kind of behavior and the second circuit has made it clear that applies to people that administer securities and that it's in looking at those types of behavior it doesn't make any difference and this is Blackrock superimposing of of state law. It doesn't really make any difference what the wrong is so long as the claim is within the enforcement or the, excuse me, within the securities exception of the provision. And that's how the second circuit handles it. Yes. Are there any other circuits that have jumped into the cold water and made a determination which is different from the second circuit approach? I cannot recall any at a circuit court level no. We have a tradition more than law that we don't divide we don't get into conflicts with circuits unless there's a reason a fairly good reason why we should and I take it your argument is there's no reason for us to do a circuit split because securities are much better handled if there's a nationwide rule rather than a hopscotch rule but on the other hand if we think they're wrong then we have to go the different direction How would you don't see a way of distinguishing these second circuit cases other than saying they're wrong so you're arguing that we follow the second circuit I believe we should follow the second circuit provides the path that we traveled to make the argument that we made and I believe even though actually in looking at it the first case Cardinelli put some limiting construction on a very broadly phrased exception I think it still easily covers the situation that we have here now Here's your response to your opponent's argument on the gross negligence claim because that seems to be of a different order from even the breach of fiduciary duty claims you've alleged I think it's fairly common understanding and I can't cite a case to you now for more than one reason it wasn't in my brief but that California recognizes negligent breach of contract Your claim just says let me just pull it up you just alleged that they breached a duty of care owed to you not by virtue you don't even say unlike in the other claim that that duty arose by virtue of the indenture why isn't that necessarily going outside the realm of the securities exception because you've just invoked just a general common law duty of care that anyone could owe anyone else and that's the source of the right that you're seeking to vindicate there why is that within the securities exception the duty of care here arises from the indenture agreement they have no duty of care to our clients outside of the indenture agreement and there's two things that have been involved with that first of all the sale of the district property which is actually a conflict of interest because they were they being Bank of New York Mellon was our indenture trustee undertaking an act that basically I won't say completely destroyed but certainly rendered the security our security much less valuable and under the law there's a duty of loyalty and a duty of care that a trustee assumes and even an indenture trustee and again I won't repeat the massive trustee obligation law that was discussed in the brief but that is the source of the violated obligations so from your perspective your account for duty of care is not a common law account but rather one arising out of specific duties imposed by the indenture agreement yeah I could think of no common law obligation that they would have to act carefully to strangers when I read former Chief Judge Jacobs opinion on this case it seemed to me that he was trying to make a fit his language about doesn't fall within the exception but he sort of he sort of says this seems to be the way we have to do it and then the opinion by Judge Lynch goes back to talking about state law and whether that's going to trump the process and it looks like that they're going to we have to take a statute which doesn't tell us what to do and try and make it work that's what I gather from the second circuit cases what state law is involved here the California law applies by the terms of the indenture agreement is there any basic difference between the way California law handles the situation and New York law there's very little California law on indenture trustee the Del Oca case I believe is the name of it is referred to in the brief and relies both on New York law and the trust indenture act the federal statute in looking at obligations so Judge Lynch his opinion in your view would apply even though he's referring to New York law because California law is similar I believe that yes I believe that California law would be very much akin and in fact when the day comes that we will have the opportunity to argue their motion to dismiss be it in state court or in federal court we will definitely have that as our position any other questions from my colleagues thank you very much for your argument we'll hear a very brief rebuttal let's give you two minutes okay I appreciate the extra time your honor first of all from the prior argument council has conceded that they bear the burden of proving to you on each and every one of their claims that their claims solely come within the exception second of all they have not identified any provision of the indenture which we allegedly breached and in fact all of the common law all of the common law duties that they are describing here spring out of events that are exogenous to the indenture and in fact their theory is that they negate expressly bargained for rights so for example they say that we failed to maintain or monitor the property but section 9.04 D says expressly that the indenture trustee shall not participate in the management counsel can I ask this though didn't he make the concession that you predicted he wouldn't didn't he make the concession that you predicted he wouldn't I well he said he did but let's see let's see them amend their complaint to actually identify where it comes from I guess listen all of the arguments you're making it seems to me are merits based arguments and reasons why you should win ultimately and maybe you will but all we're supposed to do is look at the complaint as alleged and if the source of the rights or the duties that they're trying to vindicate arise by virtue of their relationship created by the indenture then it's within the exception and you may well end up being able to prevail on the ground that well we didn't do anything in violation of those duties they have not provided any law that says that the nature of an indenture trustee relationship transforms in this way and in fact transforms in a way that completely negates what are bargained for rights I think your honor is correct part of the problems that they have here will ultimately go to why they will lose on the merits and they will lose on the merits whether we're in federal court or in state court that I'm very confident of but your honor it also goes to show how they in their complaint and in their theory of the case move farther and farther and farther away from the actual terms of the indenture and at some point they have failed we think to bear their burden of proving to you that each and every one of their claims are arising from it we think we are being saddled here with common law duties that are expressly contrary to the indenture and that shows that they are outside the indenture your honor he's also conceded that the district property is not part of the indenture he has a theory for how he should or could have done something else about that but he can't show you as he must that each and every one of those claims is there and he's conceded that that property is not something that we ordinarily owe duties under the indenture so I think for all those reasons I'm happy to take other questions but your honor we would respectfully request that you reverse thanks to both counsel for your argument the case has started to submit and we thank all counsel for the arguments today I'm sure that the members of the audience who may not be trained in federal civil procedure were just wildly enthusiastic about these arcane issues all rise this court will procession stand adjourned
judges: Wallace, Smith, Watford